**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| CHRISTOPHER COOPER | : | CIVIL ACTION | |
| | : | | |
| Plaintiff, | : | | |
| v. | : | | |
| | : | | |
| CITY OF CHESTER | : | NO.   11-5381 | |
| POLICE OFFICER STEVEN T. BYRNE | : | | |
| POLICE OFFICER PATRICK MULLEN | : | | |
| POLICE CHIEF DARREN ALSTON | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM ON PARTIAL MOTION TO DISMISS**</u>

**Baylson, J.**                                                    **DECEMBER 5, 2011**

**I.      Introduction**

The action arises out of an incident in which City of Chester police officer Steven Byrne

("Officer Byrne") allegedly shot Plaintiff Christopher Cooper ("Plaintiff") in the back and then

entered into a conspiracy with Officer Patrick Mullen ("Officer Mullen") to cover-up this use of

force by arresting Plaintiff and initiating prosecution against him on false charges.  Plaintiff also

names as defendants the City of Chester ("the City") and Police Chief Darren Alston ("Police

Chief Alston").[1]  Plaintiff alleges causes of action under 42 U.S.C. § 1983 for conspiracy and

violations of his constitutional rights of access to the courts and freedom from excessive use of

force, as well as a municipal liability claim arising under <u>Monell v. Department of Social</u>

<u>Services</u>, 436 U.S. 658 (1978).  He also asserts several state law claims including false arrest,

---

[1]Plaintiff originally also asserted claims against the City of Chester Police Department;
however, on September 27, 2011, the Court entered an Order dismissing the Police Department
as a party, based on the parties' joint stipulation to this effect. ECF No. 8.

malicious prosecution, false light and defamation.[2]  Presently before the Court is Defendants'

Partial Motion to Dismiss. ECF No. 9.  For the reasons discussed below, the Court will GRANT

Defendants' Motion in part and DENY it in part.

## II.      Factual and Procedural Background

Plaintiffs's Complaint alleges the following pertinent facts, which the Court must accept

as true for purposes of Defendants' Motion to Dismiss.  On February 5, 2011, while in uniform

and on duty as a police officer for the City of Chester, Pennsylvania, Officer Byrne shot Plaintiff

in close range, in the back, with a handgun.  Compl. ¶¶ 13, 15.  Plaintiff suffered and continues

to suffer grave injury as a result.  Compl. ¶ 16.  Officer Byrne signed an Affidavit of Probable

Cause stating that his use of force against Plaintiff was justified because Plaintiff "aimed a dark

object towards the officer with both hands."  Compl. ¶ 18(h).  Plaintiff, however, had not aimed

anything at Officer Byrne nor did he have a firearm in his possession at any relevant point.

Compl. ¶ 19.  Law enforcement searched the area and found no firearm or shell casings, nor did

they find any gun powder on Plaintiff.  Compl. ¶ 21-22.

Officers Byrne and Mullen authored a Criminal Complaint and Affidavit of Probable

Cause against Plaintiff, charging him with criminal conspiracy, possession of a controlled

substance (marijuana), and possession of drug paraphernalia. Compl. ¶ 23.  More than three

months after the shooting incident, these Officers again authored a Criminal Complaint and

Affidavit of Probable Cause against Plaintiff, charging him with possession of a firearm without

---

[2]Plaintiff makes passing reference in his Complaint to a number of additional state law
causes of action, including assault and battery, intentional infliction of emotional distress, and
illegal use of deadly force. See Compl. ¶¶ 55.  Neither party makes an argument as to whether
these claims should stand.  The Court therefore makes no judgment on these additional claims.

a license, recklessly endangering another person, aggravated assault, simple assault, and criminal

conspiracy. Compl. ¶ 26. These charges were false: at no relevant time did Plaintiff (1) possess

marijuana or drug paraphernalia; (2) enter into a conspiracy related to possession of drugs or drug

paraphernalia; or (3) possess or recklessly endanger another person with a firearm. Compl. ¶¶ 24,

27.  Officers Byrne and Mullen intentionally arrested and prosecuted Plaintiff for crimes he did

not commit to cover-up or justify the shooting or to punish Plaintiff for exercising his rights.

Compl. ¶ 78.  These charges were eventually withdrawn and dismissed, respectively, due to lack

of evidence.  Compl. ¶¶ 25, 28.  After the charges were dismissed, Defendants had the false

charges published repeatedly in local newspapers. Compl. ¶¶ 100, 105(b).

On October 12, 2011, Defendants moved for partial dismissal of Plaintiff's claims,

pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 9.  Plaintiff responded on

November 2, 2011.  ECF No. 10.  Defendant declined to file a reply brief.

**III.    The Parties' Contentions**

Defendants move to dismiss only Plaintiff's (1) conspiracy, (2) access to the courts,[3] (3)

invasion of privacy/false light, and (4) defamation claims, as well as (5) all claims asserted

against Police Chief Alston.[4]  In the alternative, Defendants move for a more definite statement

---

[3]Defendants refer to this as Plaintiff's "First Amendment" claim, but because the
Supreme Court has acknowledged various bases for the right,  Christopher v. Harbury, 536 U.S.
403, 415 n.12 (2002), this Court shall refer to it more precisely as a claim asserting denial of
access to the courts.

[4]Defendants also move to dismiss Plaintiff's section 1983 state-created danger claim.
Defs. Br. at 3, 7-8.  Plaintiff agrees to dismissal of this claims without prejudice. Pl. Br. at 18.
The Court will consequently GRANT Defendants' Motion as to this claim, without prejudice,
without further discussion.
Additionally, Defendants move to dismiss what they refer to as Plaintiff's "Fourteenth
Amendment" claim. Defs. Br. at 15.  Plaintiff explains that Defendants misread the Complaint –

pursuant to Rule 9 of the Federal Rules of Civil Procedure.

In support of their Motion to dismiss Plaintiff's access-to-the-courts claim, Defendants argue that Plaintiff has not alleged facts that demonstrate that any cover-up impeded his right of access to the judicial process or that he was denied information or evidence to mount his defense. Defs. Br. at 14-15.  Plaintiff responds that he has a constitutional right to defend himself without fear of retaliation or intimidation. Pl. Br. at 11.  He argues that he has properly alleged that the Defendant police officers falsified police reports in an attempt to prevent him from exercising his constitutional right to avail himself of the court system.  Pl. Br. at 13.

Defendants further argue that Plaintiff's conspiracy claim must fail because he has not sufficiently pleaded facts to show Defendants had an agreement to violate Plaintiff's civil rights. Defs. Br. at 5-7.  In response, Plaintiff cites paragraphs of his Complaint in which he stated that Defendants "entered into a conspiracy" and acted "in concert and conspiracy" to violate his rights.  Pl. Br. at 16-17.

With respect to Plaintiff's false light and defamation claims, Defendants contend that Plaintiff's claim cannot stand because (1) there are no such federal causes of action and (2) has not alleged that any of the individual defendants publicly disclosed Plaintiff's private

---

Plaintiff is not asserting a separate Fourteenth Amendment claim but rather only references the Fourteenth Amendment to the extent that the Fourth Amendment is enforceable against the states through the Fourteenth Amendment and that the Fourteenth Amendment is one potential source for the right of access to the courts. Pl. Br. at 20.  The Court agrees that the Complaint only references the Fourteenth Amendment for these purposes and not to assert a separate claim. Defendants' Motion as to a Fourteenth Amendment claim will therefore be DENIED as moot.

Finally, Defendants' Brief states that "[t]he defendant also does not contend that plaintiff has not alleged, albeit without substance, a municipal liability claim . . . . " Defs. Br. at 3. Despite Defendants' proposed Order that dismisses Plaintiff's municipal liability claim against the City without prejudice (Defs. Proposed Order), the Court will assume that Defendants are not moving to dismiss this claim.

information. Defs. Br. at 16. Plaintiff responds that he brings these claims under state law only, and has sufficiently stated a claim by alleging that Defendants had local newspapers publish the false charges against Plaintiff even after the charges were dismissed, which constitutes publicity that places the Plaintiff in a false light before the public. Pl. Br. at 14-15.[5]

## IV. Legal Standards

### A. Jurisdiction and Venue

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and the civil rights claims pursuant to 28 U.S.C. § 1343(a)(3). This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

### B. Motion to Dismiss for Failure to State a Claim

Under the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must plead sufficient factual allegations, that, taken as a whole, state a facially plausible claim to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly,

---

[5]Curiously, Plaintiff does not specify a defamation claim in his Complaint except to the extent that his supplemental state law claims (Counts V and VI) incorporate by reference the preceding paragraphs of the Complaint (Compl. ¶¶ 98, 103), which includes the statement in paragraph 55 that Plaintiff seeks civil damages for defamation. Additionally, neither party lays out the standard for defamation in its brief. The Court nevertheless will consider this claim.

550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to establish plausible allegations to survive the motion. Id. at 1949 (citing Twombly, 550 U.S. at 555).

In analyzing the complaint, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, the court may disregard any legal conclusions in the complaint. Id. at 210-11 (citing Iqbal, at 1949).

Generally, the district court may consider only the facts alleged in the complaint and its attachments on a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court may also take into consideration "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**V.      Analysis**

     **A.      Access to the Courts**

The Supreme Court has recognized a constitutional right of access to the courts, noting that it had previously rooted such a right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. Gibson v. Superintendent of N.J. Dep't of Law & Public Safety Div. of State Police, 411 F.3d 427, 441 (3d Cir. 2005), *overruled on other grounds* as stated in Dique v.

<u>Superintendent of N.J. State Police</u>, 603 F.3d 181, 183 (3d Cir. 2010); <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 n.12 (2002).  The right of access to the courts "not only protects one's right to physically enter the courthouse halls, but also insures that the access to the courts will be 'adequate, effective, and meaningful.'" <u>Naluan v. Purfield</u>, No. 05-6186, 2006 WL 3208771, at *2 (E.D. Pa. Nov. 2, 2006) (Yohn, J.) (quoting <u>Swekel v. River Rouge</u>, 119 F.3d 1256, 1262 (6th Cir. 1997) and citing <u>Ryland v. Shapiro</u>, 708 F.2d 967, 972 (5th Cir. 1983)).

In <u>Christopher</u>, acknowledging that it was simplifying the issue, the Supreme Court divided access-to-the-courts claims into two types: forward-looking and backward-looking. <u>Christopher</u>, 536 U.S. at 413-14 & n.11.  Plaintiffs bringing forward-looking access claims typically allege that an official action has prevented them from preparing or filing suit at the present time.  <u>Christopher</u>, 536 U.S. at 413.

In contrast, plaintiffs bringing backward-looking access claims "allege[] that some past wrongful conduct influenced a litigation opportunity such that the litigation 'ended poorly, or could not have commenced, or could have produced a remedy subsequently unavailable.'" <u>Gibson</u>, 411 F.3d at 441-42 (citing <u>Christopher</u>, 536 U.S. at 414 (footnotes omitted)).  The Supreme Court explained that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong," which is no longer available to the plaintiff because he was "shut out of court." <u>Christopher</u>, 536 U.S. at 414-15.  Therefore, to make out a backward-looking access claim, a plaintiff must plead: "(1) the underlying cause of action and whether that cause of action was anticipated or lost; (2) the official acts which frustrated that cause of action; and (3) 'a remedy that may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought.'" <u>Piskanin v.</u>

Hammer, No. 04-1321, 2005 WL 3071760, at *12 (E.D. Pa. Nov. 14, 2005) (Padova, J.) (citing Gibson, 411 F.3d at 441-42 (quoting Christopher, 536 U.S. at 414)).

The Third Circuit has elaborated that "only prefiling conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation." Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003). Moreover, although the Third Circuit has not explicitly limited denial-of-access-to-the-courts claims to conduct that meets this standard, the Third Circuit has stated that such a claim "is available" where state officials "wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled." Gibson, 411 F.3d at 445 (emphasis in original) (internal quotations omitted).

Here, Plaintiff's Complaint and brief do not present one cohesive theory expounding why his access to the courts was violated. Rather, viewing the alleged facts in the light most favorable to Plaintiff, the Court can glean three possible theories, each of which falls into the backward-looking category of denial-of-access claims. The Court now examines, and ultimately rejects, each in turn.

### 1. Theory 1: interference with effective criminal defense

First, Plaintiff may be asserting a denial-of-access claim premised on the criminal case allegedly prompted by the false police reports Defendants issued. Plaintiff argues in his brief that the "[i]f the individual police officer Defendants had not reported and filed the false charges against Plaintiff in the first place, Plaintiff would not have been forced to incur the expense of a

criminal defense counsel." Pl. Br. at 12.  Furthermore, Plaintiff argues, the filing of false charges

has "hindered his ability to obtain an acquittal." Pl. Br. at 13.  The Court finds that Plaintiff has

pleaded this theory in his Complaint through his statement that Defendants' filing of more

serious charges against him "was more than a frustration or hindrance of the litigation, but

constituted a creation of continued litigation on meritless grounds by two public officials,"

Compl. ¶ 77, as well as his general allegations that Defendants' conduct constituted "a malicious

attempt to frustrate and hinder him, cover up and/or justify the [] egregious shooting and other

gross violation of Plaintiff's civil rights" and "to cover up and/or justify the gross violation of

Plaintiff's rights." Compl. ¶¶ 78-79.  Generously construed, Plaintiff may thus be asserting a

claim that he was denied access to the courts because Defendants' conduct prevented him from

mounting an effective defense.

    In Gibson, the Third Circuit found that the plaintiff stated a claim for denial of access to

the courts by alleging that he was unable to mount an effective defense when state police officers

failed to disclose exculpatory material. 411 F.3d at 442-43.  Gibson is entirely distinguishable

from the present case, however.  First of all, unlike in Gibson, even viewing the allegations in the

most favorable light, Plaintiff has not alleged any specific way in which Defendants frustrated his

ability to mount a defense but instead relies only on Defendants' asserting false charges against

him in the first place.  This conduct may form the basis of a malicious prosecution claim, also

asserted by Plaintiff in this action, but it does not implicate his right of access to the courts.

Moreover, most importantly, in Gibson, the plaintiff was convicted, whereas in the present case,

according to Plaintiff's Complaint, all criminal charges against Plaintiff were withdrawn or

dismissed. Compl. ¶¶ 25, 28.  Plaintiff therefore has already received the relief to which he was

entitled and may not now bring a separate access-to-the-courts claim in search of this same relief.

**2.      Theory 2: inability to seek redress for wrongful use of excessive force**

Second, Plaintiff may be asserting that Defendants' filing of the false police reports interfered with his ability to seek redress for his excessive force claim.  In his brief, Plaintiff argues that the underlying action – for purposes of the test set forth in Christopher – was his "right . . . to be free of the unreasonable use of deadly force which resulted in him being shot in the back." Pl. Br. at 12.  The Court again finds that Plaintiff has properly pleaded this theory in his Complaint through his general allegations. Compl. ¶¶ 78-79.  To the extent Plaintiff's claim relies on this theory, however, it cannot stand.

In Marasco, the plaintiffs brought suit against defendant state troopers for, inter alia, the wrongful death of their decedent family member. 318 F.3d at 505.  The plaintiffs also brought a denial-of access-to-the-courts claim, alleging that defendants attempted to effectuate a cover-up related to the search for the decedent. Id. at 511-12.  The Third Circuit rejected their claim, finding that even if the plaintiffs could prove a cover-up, their claim could not survive because they had "not made a showing that the defendants' efforts either prevented [them] from filing suit or rendered their access to the courts ineffective or meaningless." Id. at 512.  Rather, the Third Circuit explained that the "very opinion" it was rendering demonstrated that the plaintiffs had been able to develop the facts in the case quite effectively. Id.

In Naluan, Judge Yohn applied this principle and denied the plaintiff's motion to amend his complaint, finding that the allegations supporting his denial-of-access claim would not survive a motion to dismiss or for summary judgment. 2006 WL 3208771, at *2-4.  There, the plaintiff alleged that the defendants wrongfully and intentionally covered up their assault of him

10

for the purpose of frustrating his right of access to the courts.  Id. at *3.  Judge Yohn found that

the alleged concealment did not prevent or delay the plaintiff from filing suit.  Id. at *4.  He was

able to discover the identity of the defendants and promptly file suit, id. (citing Swekel, 119 F.3d

at 1263), as well as "present substantial evidence of central importance to [his] case."  Id.

(quoting Marasco, 318 F.3d at 512).  As in Marasco, Judge Yohn found the plaintiff's  "very

presence before [the] court" was evidence that he could develop his case effectively.  Naluan,

2006 WL 3208771, at *4.  The plaintiff therefore could not show that defendants' conduct

rendered his access to the courts "ineffective or meaningless" or that it "substantially reduced"

the likelihood of relief. Id.

        More recently, Judge Connor of the Middle District of Pennsylvania employed the same

logic, determining that the plaintiff could not make out a denial-of-access claim because he

"pursued and ostensibly received recovery" for his underlying claim in the very lawsuit before

the court at that time.  See v. Fink, No. 1:06-CV-2475, 2009 WL 648936, at *4 (M.D. Pa. March

10, 2009).

        Following Marasco, Naluan, and See, this Court finds that Plaintiff cannot state a denial-

of-access claim premised on his inability to seek redress for his excessive force claims.  As in

these three cases, Plaintiff here has been able to identify the defendants and develop the facts of

this claim in a timely Complaint.  Defendants have even acknowledged that Plaintiff's excessive

force claims are properly-pleaded. See Defs. Br. at 3 ("This Motion is thus a partial Motion to

Dismiss, at this stage of the pleadings; defendants are unable to challenge the excessive force

claim . . . . ").  The doors of this Court are wide open to Plaintiff; through the lawsuit currently

before this Court, Plaintiff has a forum to seek redress for Defendants' excessive use of force.

For these reasons, Plaintiff cannot maintain a denial-of-access claim on this theory.

### 3.    Theory 3: retaliation for bringing suit

Finally, Plaintiff may be asserting a claim that Defendants filed successive criminal charges against Plaintiff in retaliation for Plaintiff's defending himself and asserting his constitutional rights.  The Complaint alleges that Defendants "intentionally falsified, exaggerated, and trumped up charges against Plaintiff . . . to punish Plaintiff for exercising his rights." Compl. ¶ 21.  Plaintiff argues that he has stated an access claim because the "individual officers falsified reports in an attempt to prevent Plaintiff from exercising his constitutional rights." Pl. Br. at 11.  The Third Circuit has determined that the right of access to the courts must be freely exercisable without hindrance or fear of retaliation. Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981).  Plaintiff relies on Milhouse, in which the Third Circuit concluded that the plaintiff stated an access-to-the-courts claim by alleging that he was subject to a series of disciplinary actions as retaliation for initiating a civil rights suit against prison officials. Id. at 373; see also Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (citing Milhouse with approval).  The critical fact distinguishing Milhouse from this case, however, is that here, Defendants' alleged behavior supposedly in retaliation for Plaintiff's filing suit to protect his civil rights in fact occurred before Plaintiff filed his Complaint.  Plaintiff's Complaint in this case does not suggest that Plaintiff engaged in any activity to enforce his constitutional rights prior to dismissal of all criminal charges.  The mere filing of additional criminal charges is not sufficient to support Plaintiff's claim.

If Plaintiff is instead construing retaliation as conduct preventing him from filing suit to enforce his constitutional rights, the Court already rejected this theory: Plaintiff was not

prevented from filing suit; indeed, he has timely brought this very lawsuit.  Similarly, in <u>See</u>, the plaintiff alleged that the defendant issued a disorderly conduct report against him to discourage him from bringing an excessive force claim against him. 2009 WL 648936, at *4.  Judge Connor granted summary judgment for the defendant, finding that the plaintiff could not maintain his claim because the defendant did not succeed in preventing him from filing suit to enforce his rights.  <u>Id.</u>  For the above reasons, Plaintiff cannot maintain an access-to-courts claim on a retaliation theory.

The Court concludes there are no facts on which Plaintiff would be able to make out an access-to-the-courts claim against Defendants. The Court will therefore GRANT Defendants' Motion to Dismiss Plaintiff's access-to-the-courts claim with prejudice.

### B.      Conspiracy

At various points in the Complaint, Plaintiff makes reference to a conspiracy.  Plaintiff alleges a conspiracy to violate his Fourth Amendment right to be free from excessive force (Compl. ¶¶ 12, 44, 61), a conspiracy to violate his constitutional right of access-to-the-courts (Compl. ¶¶ 78-79), and a conspiracy to "commit and/or cover up" violations of state law including malicious prosecution (Compl. ¶¶ 99, 104).  It is unclear from Plaintiff's Complaint under which statute he asserts a conspiracy claim.  Because Plaintiff argues in his brief that he has stated a conspiracy claim under section 1983 (Pl. Br. at 16), the Court will analyze his allegations under that standard.  To state a conspiracy claim under section 1983, a plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." Perrano v. Twp. of Tilden, 423 Fed App'x 234 (3d Cir. 2011).  A plaintiff may only make out a conspiracy claim when there has been an actual deprivation of such a right.

13

Perrano, 423 Fed. App'x at 239.  Plaintiff's claim of conspiracy to violate his state law rights therefore cannot stand. See Piskanin v. Hammer, No. 04-1321, 2005 WL 3071760, at *5 (E.D. Pa. Nov. 14, 2005) (Padova, J.) (dismissing plaintiff's section 1983 claim that defendants conspired to violate his state law rights because "[s]ection 1983 does not provide a private right of action for violation of state law").  The same principle bars Plaintiff's conspiracy claims regarding his right of access to the courts, as this Court has already dismissed the access claim with prejudice. See Perrano, 423 Fed. App'x at 236, 239 (upholding District Court's dismissal of plaintiff's section 1983 conspiracy claim because plaintiff failed to show an actual deprivation of a federally-protected right, when plaintiff's underlying constitutional claims had been dismissed with prejudice).  Notably, Plaintiff relies exclusively on his state law and access-to-the-courts allegations to argue that he has stated a section 1983 conspiracy claim. Pl. Br. at 17.  Construing the allegations in the light most favorable to Plaintiff, the Court will still consider whether Plaintiff has sufficiently stated a claim under section 1983 that Defendants conspired to deprive him of his Fourth Amendment rights.

"[T]o survive a motion to dismiss a conspiracy claim, [a p]laintiff must allege facts allowing an inference of combination, agreement, or understanding among all or between any defendants to violate the plaintiff's rights." Morris v. Philadelphia Housing Authority, No. 10-5431, 2011 WL 1661506, at *5 (E.D. Pa. April 28, 2011) (Baylson, J.) (citing Gerhart v. Pennsylvania, No. 09-1145, 2009 WL 2581715, at *6 (E.D. Pa. Aug. 13, 2009) (Golden, J.)).  A plaintiff must aver supporting facts including the "conduct, time, place, and persons responsible" for the alleged conspiracy.  Kost v. Dep't of Pub. Welfare, No. 07-2404, 2009 WL 466166, at *4 (E.D. Pa. Feb. 24, 2009) (Jones II, J.).  "A mere incantation of the words 'conspiracy' or 'acted in

14

concert' does not talismanically satisfy the pleading requirements for a conspiracy claim." Id.

Plaintiff avers that Defendants, "each of them acting separately and in concert . . . engaged in conduct resulting in grievous injury and damage to Plaintiff, depriving him of the rights, privileges and immunities secured by the Fourth Amendment . . . ." Compl. ¶ 12.  Plaintiff also alleges generally that Defendants "have subjected Plaintiff . . . to a pattern of conduct consisting of excessive use of force . . . and . . . conspiracy . . . resulting in the denial of the rights . . . guaranteed . . . by the Constitution." Compl. ¶ 43.  Plaintiff expands on this allegation, stating essentially that this systematic pattern of conduct consisting of excessive force and conspiracy was visited upon Plaintiff by Defendants "acting in concert" with unknown persons.  Compl. ¶ 44.  Finally, under Count I, which delineates a Fourth Amendment claim against Officer Byrne, Plaintiff alleges that Officer Byrne "acted in concert and conspiracy with all other Defendants in violating Plaintiff's constitutional rights as specified herein." Compl. ¶ 61.  These are the only paragraphs in the Complaint that suggest "a combination, agreement, or understanding among all or between any defendants" to violate Plaintiff's Fourth Amendment rights.  See Morris, 2011 WL 1661506, at *5.  Plaintiff alleges that Officer Byrne alone shot him (Compl. ¶ 31) and there is no other indication in the Complaint that this use of force was a product of an agreement with another party.  Plaintiff is merely reciting the empty terms "conspiracy" and "in concert" without supplying the requisite details of an agreement.  It is well established that this is insufficient to state a claim for conspiracy under section 1983.  Morris, 2011 WL 1661506, at *5.  On the contrary, it "is merely the type of talismanic invoking of a general 'acting in concert' that precedent disfavors."  See Kost, 2009 WL 466166, at *5.  The Court will therefore DISMISS Plaintiff's conspiracy claim without prejudice.

15

C.       **Invasion of Privacy/False Light**

In Pennsylvania, invasion of privacy "is not one tort, but a complex of four." <u>Curran v. Children's Serv. Ctr.</u>, 578 A.2d 8, 12 (Pa. 1990) (quoting <u>Vogel v. W.T. Grant Co.</u>, 327 A.2d 133, 136 n.9 (Pa. 1974).  The fourth invasion of privacy tort provides a cause of action for "publicity that unreasonably places the other in a false light before the public." <u>Id.</u> (quoting Restatement (Second) of Torts § 652A).  "It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonably man in his position, that there is a cause of action for invasion of privacy." 578 A.2d at 13 (quoting Restatement (Second) of Torts § 652E, comment c).  The Third Circuit has recently delineated the elements of a false light claim under Pennsylvania law: "(1) publicity, (2) given to private facts, (3) which could be highly offensive to a reasonable person, and (4) which are not of legitimate concern to the public." <u>Smith v. Borough of Dunmore</u>, 633 F.3d 176, 182 (3d Cir. 2011) (citing <u>Strickland v. Univ. of Scranton</u>, 700 A.2d 979, 987 (Pa. Super. Ct. 1999).[6]  In the context of a false light claim, "publicity" "means that the

_____

[6]<u>Strickland</u>, on which the Third Circuit relies in setting forth this standard, cites <u>Harris by Harris v. Easton Publishing Co.</u> 483 A.2d 1377, 1384 (Pa. 1984) for the elements of a false light claim.  <u>Strickland</u>, 700 A.2d at 987.  However, in expounding this test, <u>Harris</u> was referring to a different invasion of privacy tort – publicity given to private life – which is based on section 652D of the Restatement (Second) of Torts.  <u>Harris</u>, 483 A.2d at 1384.  In contrast, the Pennsylvania Supreme Court has relied on section 652E of the Restatement (Second) of Torts to define the elements of a false light claim, stating that a plaintiff must show "(a) the false light . . . would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  <u>Curran</u>, 578 A.2d at 12.  Other courts applying Pennsylvania law have stated that a plaintiff bringing a false light claim need not show the matter publicized was private, but rather "[i]t is enough that the defendant has given publicity to any matter concerning the plaintiff that creates a 'highly offensive' false impression about the plaintiff." <u>Fogel v. Forbes, Inc.</u>, 500 F. Supp. 1081, 1087 (E.D. Pa. 1980) (Broderick, J.); <u>see also</u> <u>Mzamane v. Winfrey</u>, 693 F. Supp. 2d 442, 511 n.37 (E.D. Pa. 2010) (Robreno, J.) (string citing cases applying Pennsylvania law which

matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Curran, 578 A.2d at 12 (quoting the Restatement (Second) of Torts, § 652D, comment a).

Plaintiff has alleged that "Defendants had the false charges [against Plaintiff] published repeatedly in local newspapers, even after all charges were dismissed." Compl. ¶¶ 100, 105(b) (emphases omitted). The element of publicity has been found where as few as seventeen people were made aware of the allegedly offensive information about a plaintiff. Harris by Harris v. Easton Publishing Co. 483 A.2d 1377, 1385-86 (Pa. 1984) (publication to a group of seventeen individuals was large enough to constitute publicity as a matter of law).[7] The Court finds that Plaintiff's allegation that Defendants repeatedly published the statements about him in more than one local newspaper satisfies the element of publicity. Additionally, a reasonable person could be offended by publication of information about criminal charges against him, when those charges were false and in fact had already been dismissed. Moreover, drawing all reasonable inferences in Plaintiff's favor, criminal charges that are false and were dismissed are not of legitimate concern to the public. It is unclear whether the charges against Plaintiff were private facts, as such charges and court records are typically a matter of public record. The Court will nevertheless view the allegations in the light most favorable to Plaintiff and assume at this point that these facts were indeed private. The Court will therefore DENY Defendants' motion as to

---

have followed Fogel). This Court need not determine the proper test for a false light claim at this stage, but would invite the parties to develop the record on this topic, should it become relevant at a later point in the litigation.

[7] Although Harris was considering publicity in the context of the tort of publicity give to private life, and not false light, 483 A.2d at 1384, the element of "publicity" is the same under both torts. See Restatement (Second) of Torts § 652E, comment a.

Plaintiff's false light claim.

### D.    Defamation

"Defamation. . . is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." Mzamane, 693 F. Supp. 2d 442, 476 (E.D. Pa. 2010) (Robreno, J.) (quoting Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008)).  Under the applicable Pennsylvania statute, a plaintiff in an action for defamation has the burden of proving:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. Ann. § 8343(a). "Whether a statement can reasonably be construed as defamatory is a question of law for the court to decide."  Rockwell v. Allegheny Health, Educ. & Research Found., 19 F. Supp. 2d 401, 404 (E.D. Pa. 1998).[8]  In determining whether a statement is defamatory under Pennsylvania law, a court must examine the effect that statement is

---

[8]"If the court determines that [the communication complained of] is capable of a defamatory meaning, it then becomes the jury's function to decide whether the communication was so understood by its recipients." Zartman v. Lehigh Cnty. Humane Soc'y, 482 A.2d 266, 268 (Pa. Super. Ct. 1984).

calculated to produce and "the impression it would naturally engender in the minds of the

average persons among whom it is intended to circulate." Id. at 405.  A statement is defamatory

"if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule,

or injure him in his business or profession" or otherwise "lower[s] a person in the estimation of

the community" or "deter[s] third persons from associating with him." Mzamane, 693 F. Supp.

2d at 477 (citing Joseph, 959 A.2d at 334)).  Courts should not dismiss defamation claims

"unless . . . it is clear that the communication is incapable of defamatory meaning." Rapid

Circuits, Inc. v. Sun Nat. Bank, No. 10–6401, 2011 WL 1666919, at *12 (E.D. Pa. May 3, 2011)

(emphasis in original).  Indeed, "even where the complained-of statements are literally true, if,

when viewed in toto, the accurate statements create a false implication, the speaker may be liable

for creating a defamatory implication."  Mzamane, 693 F. Supp. 2d at 478 (explaining that even

though the Pennsylvania Supreme Court has not addressed a claim premised on  "defamation by

innuendo," other courts applying Pennsylvania law have recognized defamation by innuendo as a

cognizable legal theory).[9]

Plaintiff here has alleged that "Defendants had the false charges [against Plaintiff]

published repeatedly in local newspapers, even after all charges were dismissed."  Compl. ¶¶

100, 105(b) (emphases omitted).  This allegation provides the basis of both Plaintiff's false light

and defamation claims.  A plaintiff may maintain a cause of action for false light without being

---

[9]Courts must also determine whether the individual asserting the defamation claim is a public or private figure. Marcone v. Penthouse Intern. Magazine for Men, 754 F.2d 1072, 1081-82 & n.4 (3d Cir. 2005) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974)).  Public figures must make an additional showing of actual malice to make out a defamation claim. Id. There is no indication from the Complaint that Plaintiff is in any way a general or limited public figure, so the Court need not consider whether Defendants here acted with actual malice.

defamed.  Restatement (Second) of Torts § 652E, n.b.  When the publicity that allegedly places

the plaintiff in a false light is defamatory, however, "the action for invasion of privacy will afford

an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both,

although he can have but one recovery for a single instance of publicity." Morgenstern v. Fox

Television Stations of Philadelphia, No. 08-0562, 2008 WL 4792503, at *11 (E.D. Pa. Oct. 31,

2008) (O'Neill, J.) (quoting Restatement (Second) of Torts § 652E, comment b).  Consequently,

although Plaintiff here will ultimately not be able to prevail on both a false light and a

defamation claim for the same conduct, the Court may permit him to pursue both theories at this

stage.

 Viewing the facts in the light most favorable to Plaintiff, the Court will assume that the

articles in which Defendants "had the false charges [against Plaintiff] published" stated or at least

implied that Plaintiff had committed the crimes charged.  The exact content of the statements in

question is unclear from Plaintiff's Complaint.  Nevertheless, such specificity is not required to

make out a defamation claim brought in federal court.  The pleading standard governing

Plaintiff's defamation claim in this Court is set out in Federal Rule of Civil Procedure 8(a).

Rapid Circuits, 2011 WL 1666919, at * 11.  Under this rule, a plaintiff asserting a defamation

claim must only "allege facts which sufficiently set forth the substance of the alleged defamatory

statements to give proper notice of plaintiff's claim to defendants." Id.  "[A] defamation plaintiff

does not have to plead the precise defamatory statements . . . . " Tuman v. Genesis Assocs., 935

F. Supp. 1375, 1391 (E.D. Pa. 1996).  It is well settled that "[s]tatements imputing the

commission of an indictable offense are capable of defamatory meaning as a matter of law."

Marcone v. Penthouse Intern. Magazine for Men, 754 F.2d 1072 (3d Cir. 1985) (citing Baird v.

21

Dun & Bradstreet, 285 A.2d 166, 171 (Pa. 1971)).  Plaintiff's Complaint is sufficient to give

Defendants notice of the basic nature of his claim and the substance of the defamatory

communications he contends Defendants made.  Consequently, the Court will DENY

Defendants' Motion to Dismiss as to Plaintiff's defamation claim.

     **E.**     **Claims Asserted Against Police Chief Alston**

     Defendants also move to dismiss all claims against Police Chief Alston. Defs. Br. at 3, 8-

14.  Plaintiff agrees to dismissal of these claims without prejudice. Pl. Br. at 18-19.  Having

concluded that Plaintiff's claim against Police Chief Alston cannot survive, the Court will

GRANT Defendants' Motion to dismiss all claims against Police Chief Alston, but with

prejudice.  Plaintiff has not alleged that Chief Alston had any personal involvement in violating

his rights.  See Pl. Br. at 19-20 n.6 ("Plaintiff is not claiming at this point . . . that Defendant

ALSTON was directly involved in the shooting or malicious prosecution . . . . ").  "It is, of

course, well established that a defendant in a civil rights case cannot be held responsible for a

constitutional violation which he or she neither participated in nor approved." C.H. ex rel. Z.H. v.

Olivia, 226 F.3d 198, 201  (3d Cir. 2000).  There is no vicarious liability under section 1983.  Id.

at 202 (citing  Monell v. Department of Social Services, 436 U.S. 658 (1978)).  To the extent that

Plaintiff is asserting a Monell claim against Chief Alston for failure to train, supervise and

discipline police officers regarding the use of force, or for otherwise instituting unconstitutional

policies, practices, or customs, Plaintiff's claim is properly asserted against the City of Chester

and will proceed against Defendant City of Chester only.

**VI.**     **Conclusion**

     For the foregoing reasons, the Court GRANTS Defendants' Motion for Partial Dismissal

as to Plaintiff's section 1983 state-created danger, conspiracy, and access-to-the courts claims, as well as all claims against Defendant Police Chief Alston, but DENIES it as to Plaintiff's false light and defamation claims. Plaintiff is GRANTED leave to amend his Complaint.

An appropriate Order follows.

O:\CIVIL 11-12\11-5381 Cooper v. City of Chester\11-5381 Cooper v. City of Chester Memo MTD.wpd