IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER COOPER, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CITY OF CHESTER, | : | NO. 11-5381 |
| POLICE OFFICER STEVEN T. BYRNE, | : | |
| POLICE OFFICER PATRICK MULLEN | : | |
| | : | |
| Defendants | : | |

FILED
MAR 11 2013
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                                                  March 11, 2013

### I. INTRODUCTION

This action arises out of an incident in which City of Chester police officer Steven Byrne shot Plaintiff Christopher Cooper and then, allegedly, covered up this use of force by initiating prosecution against him on false charges.[1] Plaintiff alleges causes of action against Officer Byrne under 42 U.S.C. § 1983 for excessive use of force, false arrest, and malicious prosecution. Plaintiff also asserts state law claims against both Officer Byrne and Officer Patrick Mullen, including assault and battery, malicious prosecution, false arrest, false light, and intentional infliction of emotional distress. Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 29). For the reasons discussed below, the Court will DENY Defendants' Motion on Plaintiff's federal claims, and GRANT Defendants' Motion on some, but not all, of the state claims.

---

[1] The City of Chester, the Chester Police Department, and Police Chief Darren Alston were also named as Defendants, but are no longer so. On September 27, 2011, this Court dismissed Plaintiff's claims against the Police Department pursuant to the parties' joint stipulation, ECF No. 8; on December 5, 2011, the Court granted Defendants' Motion to Dismiss all claims against Chief Alston, ECF No. 12; and on December 26, 2012, Plaintiff agreed to drop his municipal liability claim against the City of Chester, Pl's Resp. to Def's Mot. for Summ. J. at 18.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The undisputed material facts in this case remain few and far between. They are as follows:

At approximately 2 a.m. on February 5, 2011, Officer Byrne was in a marked police vehicle headed westward on 8th Street in Chester, Pennsylvania. As Byrne approached 8th Street's intersection with Kerlin Street, gun shots were fired one block south on Kerlin. Shortly after the shots were fired, an SUV driving north on Kerlin came into Byrne's view as it crossed 8th Street. Although the facts are in dispute about what Byrne saw as the SUV passed in front of him, it is undisputed that Byrne immediately drove his patrol car onto Kerlin, turned on his lights, and pulled a foot or two behind the SUV's rear bumper. When the SUV reached 9th Street, it turned into a gas station parking lot, with Byrne pulling up closely behind, followed by an unmarked car driven by Officer Michael Canfield. As soon as the SUV came to a stop, the Plaintiff opened the SUV's front passenger door and ran away—refusing to heed Byrne's repeated commands to stop. Thus began a foot chase which ended with Plaintiff being shot in his right buttock and collapsing before a fence. Police searches that evening and the following day failed to find a gun on Cooper, the SUV that he was riding in, or the area in which the chase occurred. The only contraband found was a small bag of marijuana in the rear seat of the SUV.

On February 5, Cooper was charged with several drug-related offenses, including drug possession and criminal conspiracy. Although the drug charges were withdrawn later that month, and although no new evidence linking Cooper to a gun had been obtained in the months following the incident, Cooper was arrested on gun-related charges in May. The arrest was based on a May 6 Affidavit of Probable Cause written by Officer Mullen at the request of Assistant District Attorney Brian Doherty. Cooper was charged with carrying a firearm without

a license (18 PA. CONST. STAT. § 6106); recklessly endangering another person (18 PA. CONST. STAT. § 2705); aggravated assault (18 PA. CONST. STAT. § 2702); simple assault (18 PA. CONST. STAT. § 6106); and criminal conspiracy (18 PA. CONST. STAT. § 903). At a preliminary hearing on August 9, 2011, each of these charges was dismissed based on a judicial determination that the Commonwealth failed to demonstrate a prima facie case.

On August 25, 2011, Plaintiff initiated this action against both Bryne and Mullen, as well as other defendants who are no longer a party to this dispute. On October 12, 2011, Defendants filed a Motion to Dismiss, which this Court granted in part, and denied in part, on December 5, 2011. (ECF No. 11). The Plaintiff thereupon filed an Amended Complaint on December 22, 2011. (ECF No. 15). After engaging in extensive discovery, Defendants moved for summary judgment on all claims. (ECF No. 29).

### III. LEGAL STANDARD[2]

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-movant. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

---

[2] This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331, 1343, and 1367.

### IV. ANALYSIS

After careful review of the record in this case, it is clear that genuine disputes of material fact exist as to all of Plaintiff's claims with the exception of intentional infliction of emotional distress and false light.

### A.  Excessive Force

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 396 (1989) (emphasis omitted). The reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. Because of its fact-sensitive nature, "reasonableness under the Fourth Amendment should frequently remain a question for the jury." Abraham v. Raso, 183 F.3d 279, 289-90 (3d Cir. 1999).

The record in this case creates a genuine dispute about the material facts relevant to determining the reasonableness of Byrne's use of force. Byrne claims he acted reasonably based, primarily, on evidence that (1) he saw gunshots being fired by the SUV as it crossed 8th Street, and (2) during his foot chase, he entered a dark alleyway where he saw Cooper turning towards him with a metallic object in his hand that looked like a gun.[3] The Plaintiff has produced admissible evidence, however, that contradicts both of these claims, including: (A) Officer Canfield's testimony that he did not hear or see any shots being fired from the SUV, despite having an unobstructed view of the SUV's passenger side windows when it crossed 8th Street;

---

[3] Defendants argue that this metallic object may have been Cooper's cell phone (which officers found on, or near, his person after he fell to the ground).

(B) the absence of a gun in the SUV, on Cooper, or near the scene of the chase; (C) the finding of shell casings at 7th Street, but not at 8th Street; and (D) an expert forensic opinion concluding that an entry wound in Cooper's right buttock is inconsistent with Byrne's claim that Cooper was turning counterclockwise to face him at the time he fired.[4] See Lamont v. New Jersey, 637 F.3d 177, 184-85 (3d Cir. 2011) ("[A] jury may find that the troopers improperly continued firing after [plaintiff] had turned away from them and no longer posed a threat."). It is not the province of this Court to determine which party has the better side of the facts; that is for a jury to decide.[5]

## B. Assault & Battery

Under Pennsylvania tort law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994). Whether an "officer's conduct constitutes an assault and battery" is dependent on "the reasonableness of the force used." Id. As discussed above, a genuine dispute exists about the reasonableness of Byrne's use of force. Although police officers in Pennsylvania can only be liable for injuries caused by "willful misconduct," 42 PA. CONST. STAT. § 8550, the evidence is sufficient to enable a jury to make this inference. See Berete v. Cortazzo, No. 11-4111, 2012 WL 6628040, *5-6 (E.D. Pa. Dec. 18, 2012).

---

[4] Defendants correctly point out that Plaintiff told Detective Robert Lythgoe several hours after the shooting that he heard a gun being fired from the back seat of the SUV. (Plaintiff, who insists there was no gun in the vehicle, points out that Detective Lythgoe interviewed him in his hospital bed almost immediately after undergoing surgery, and that he was too sedated at the time to think clearly.) Defendants have also produced a report by a forensic pathologist that claims an entry wound in Plaintiff's right buttock is not inconsistent with Byrne's claim that Plaintiff was turning to face him when he fired the shot. The most that can be said of this evidence is that a genuine factual dispute exists about the relevant events preceding Byrne's use of force. This dispute is for a jury, not a court, to decide. See Abraham, 183 F.3d at 294 ("Considering the physical evidence together with the inconsistencies in the officer's testimony, a jury will have to make credibility judgments, and credibility determinations should not be made on summary judgment.").

[5] Although Byrne claims that he is protected by qualified immunity, the Fourth Amendment right to be free from the unreasonable use of force by a police officer has been a clearly established rule of constitutional law since, at least, 1989 when the Supreme Court issued Graham.

5

## C. Malicious Prosecution

Defendants claim they cannot be liable for malicious prosecution because it was the Assistant District Attorney's decision, not Byrne's or Mullen's, to file the charges against Cooper. This, however, is a misstatement of the law. A police officer can be held liable for malicious prosecution if he "fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." Milbourne v. Baker, No. 11-1866, 2012 WL 1889148, at *11 (E.D. Pa. May 23, 2012).[6] As discussed above, a jury could conclude, based on the evidence Plaintiff has produced, that Officer Byrne lied about the events leading to the shooting as a way to justify his actions. Plaintiff has also produced evidence that Officer Mullen's Affidavit of Probable Cause failed to disclose material information that contradicted Byrne's account of events,[7] including the fact that Police failed to find a gun and Officer Canfield's testimony that he never heard, or saw, gun shots coming from the SUV.

## D. False Arrest

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). Where, as here, the arrest was conducted pursuant to a warrant, the Plaintiff can prevail if "the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are

---

[6] This rule is clearly established in federal law and thus qualified immunity is inapplicable to Plaintiff's federal malicious prosecution claim. See, e.g., Mahoney v. Kesery, 976 F.2d 1054, 1061 (7th Cir. 1992); Sanders v. English, 950 F.2d 1152, 1162–64 (5th Cir. 1992); Barlow v. Ground, 943 F.2d 1132, 1136–37 (9th Cir. 1991); Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir. 1990).

[7] As Mullen admitted during his deposition, the affidavit of probable cause was copied virtually verbatim from Byrne's written account.

6

material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks omitted). Based on the evidence and reasons already set forth, a factual dispute exists as to Plaintiff's false arrest claims against both Defendants. Although Officer Byrne did not arrest Plaintiff, a police officer can be "liable for a false arrest that occurs outside of his presence if he 'had reason to know' that such a false arrest was likely to occur." Escalera v. Lunn, 361 F.3d 737, 748 n.4 (2d Cir. 2004) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).[8]

### E.  Intentional Infliction of Emotional Distress

"Under Pennsylvania law, a claim of intentional infliction of emotional distress must be supported by competent medical evidence of the alleged mental injury." Wnek v. City of Philadelphia, No. 05-3065, 2007 WL 1410361, at *5 (E.D. Pa. May 10, 2007). Although Plaintiff has produced competent medical evidence about his *physical* injuries, he has produced no evidence that these injuries have caused him emotional harm. Plaintiff acknowledges this, but argues that "at trial," the medical evidence of physical harm "will be shown to include the emotional distress that goes along with being shot in the back while unarmed." Pl's Resp. to Def's Mot. for Summ. J. at 34. Although this argument might be an appropriate basis to survive a motion to dismiss, it is not a basis to survive a motion for summary judgment.

### F.  False Light

False light is an invasion of privacy that involves "publicity that unreasonably places the other in a false light before the public." Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 654 (Pa. Super. 1999). Plaintiff claims that Defendants placed him in a false light by telling a

---

[8] Cf. Perry v. Redner's Market, Inc., No. 09-5645, 2010 WL 2572651, at *4 (E.D. Pa. June 21, 2010) ("[A] private individual can be held liable for false arrest and/or false imprisonment, where he knowingly provides false information to authorities and where the arrest and/or imprisonment results from this information."); Milbourne, 2012 WL 1889148, at *11 (stating that police officer can be liable for malicious prosecution if he "makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute").

7

Chester newspaper that he was wanted for crimes that had already been dismissed at the preliminary hearing. To support this claim, Plaintiff has produced evidence that a photograph of his face was published in a local newspaper alongside a list of his criminal charges. The paper, however, did not identify the photograph as being the Plaintiff; it identified the photograph as being somebody else. Further, when Plaintiff's godfather contacted the newspaper to ask for an explanation, the newspaper told him it was a "misprint." The only evidence linking Defendants to the publication of this photo is a hearsay statement by Plaintiff's own attorney during the deposition of another witness. According to Plaintiff's attorney, an unidentified employee of the paper (who was never deposed) told him that the paper received crime information from the Chester police. Even if we could consider this hearsay statement, it falls short of the evidence necessary to create a factual dispute that Defendants were the ones who gave Plaintiff's information to the newspaper. See Porter v. Joy Realty, Inc., 872 A.2d 846, 849 (Pa. Super. 2005) (holding that circumstantial evidence can prove publication element of defamation claim, but only if the "quantity and quality" of evidence is "substantial"); Tanzosh v. InPhoto Surveillance, Kroll, Inc., No. 05-1084, 2008 WL 4415693, at *6 (M.D. Pa. Sept. 26, 2008) ("[V]ery similar standards apply to defamation and false light claims . . . .").[9]

V. CONCLUSION

For the foregoing reasons, the Court will DENY Defendants' Motion for Summary Judgment on the excessive force, assault and battery, false arrest, and malicious prosecution claims, but GRANT Defendants' Motion for Summary Judgment on the intentional infliction of

---

[9] To the extent that Plaintiff is alleging defamation as an independent cause of action, this claim is dismissed for the same reasons provided above for Plaintiff's false light claim.

8

emotional distress and false light claims. Plaintiff's request to add federal claims against Defendant Mullen is DENIED.

An appropriate order follows.

O:\CIVIL 11\11-5381 Cooper v. City of Chester\msj_opinion.docx